74 F.3d 1246
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert M. LATHAM, Petitioner-Appellant,
v.
Frank PREWITT, Respondent-Appellee.
 No. 95-35057.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1995.
Decided Jan. 19, 1996.
 
 Before: BOOCHEVER, FERNANDEZ, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We review de novo the decision to grant or deny a petition for writ of habeas corpus. McKenna v. McDaniel, 65 F.3d 1483, 1490 (9th Cir.1995).
 
 
 3
 There is a serious question of law whether the district court correctly refused to review the merits, because of Latham's procedural default, or whether the procedural default does not preclude merits review, because the state appellate court reviewed Latham's contentions on the merits, subject to a plain error standard. Because Latham's petition would fail whether we treated it on the merits or under the more stringent cause and prejudice standard applicable to errors forfeited in state court, we need not resolve this question.
 
 
 4
 On October 21, 1993, Latham filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254(a). In his habeas petition, Latham claims that his due process rights were abridged because of prosecutorial misconduct during closing arguments. Latham's counsel did not contemporaneously object to any of the alleged misconduct, despite an Alaska procedural rule requiring contemporaneous objection. On direct appeal, the Alaska Court of Appeals noted that counsel failed to object to any portion of the prosecutor's argument, and consequently reviewed for "plain error." The court used a standard for plain error contained in Potts v. State, 712 P.2d 385, 390 (Alaska App.1985), stating:
 
 
 5
 A plain error is one that is (1) so obvious that it must have been apparent to a competent judge and a competent lawyer even without an objection and (2) so substantially prejudicial that failing to correct it on appeal would perpetuate a miscarriage of justice.... On appeal, then, we consider whether the prosecutor's statements, if in error, constituted such egregious conduct as to 'undermine the fundamental fairness of the trial.' (Citations omitted.)
 
 
 6
 (ER Tab C, 2). The last phrase ("undermine ... trial") was quoted from United States v. Young, 105 S.Ct. 1038, 1047 (1985). The state court concluded that none of the prosecutor's conduct constituted plain error. The federal district court determined that it was precluded from reaching Latham's due process challenge, except under a cause and prejudice standard, because counsel's failure to comply with the state procedural rule constitutes an independent state law ground. See Osborne v. Ohio, 110 S.Ct. 1691, 1703 (1990).
 
 
 7
 Latham argues that, because the state appellate court reviewed his claim for plain error, it invited federal habeas review. See Walker v. Endell, 850 F.2d 470, 474 (9th Cir.1987). Under plain error, we reverse "only if, viewing the error in the context of the entire record, the impropriety 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice.' " United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993) (citation omitted); Walker, 850 F.2d at 474. Latham argues that Osborne overrules or limits Walker. As explained above, we need not decide whether that is so.
 
 
 8
 If we were to apply Walker, we would review for plain error.[1] If we were to apply Osborne, we would determine whether Latham showed cause for his failure to object at trial, and actual prejudice flowing from his failure to do so. Latham did not show cause and prejudice, so we would have to affirm if the Osborne test were the correct one to apply. The remainder of this disposition analyzes Latham's arguments on the assumption that the federal court should have applied the plain error standard because the state appellate court did, even though we do not decide that this would be the correct mode of review.
 
 
 9
 Vouching.
 
 
 10
 Latham argues that the prosecutor vouched for the credibility of J.D. In support of this argument, he notes that the prosecutor made sixteen separate references to J.D.'s credibility, using such phrases as "[e]verything she said rang true," (ER Tab A, 469), and "the child simply sounds like she's telling the truth." (ER Tab A, 483). " 'As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses.' " United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993). Nevertheless, "prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying." Id.
 
 
 11
 In context, the prosecutor's statements were reasonable inferences from the evidence, not personal assurances based on something which the prosecutor knew outside the evidence before the jury. The prosecutor's general argument was that, if viewed through the lens of common sense notions regarding when and why people lie, the content and context of J.D.'s testimony supported its truthfulness. Read in context, each of the statements that Latham complains of cites specific evidence or testimony and invites the jury to infer the truthfulness of J.D.'s testimony from that evidence. (See, e.g., ER Tab A, 471) ("the content of her testimony verifies that she's telling the truth.").
 
 
 12
 Latham also argues that the prosecutor vouched for the credibility of Mrs. Latham by referring to the immunity agreement the government had granted her. Latham's counsel did not contemporaneously object to the introduction of the immunity agreement into evidence, testimony regarding it, or the prosecutor's arguments regarding it. The Alaska Court of Appeals did not consider the issue. The failure to comply with a state's contemporaneous objection rule bars plain error habeas review regarding this issue even under Latham's construction of Osborne, because the state court did not review for plain error. Wood, 957 F.2d at 1549 (9th Cir.1992).
 
 
 13
 Mischaracterized Evidence.
 
 
 14
 Latham argues that the prosecutor breached her obligation not to present false evidence to the court by stating that the immunity agreement was "worthless" to Mrs. Latham. The prosecutor placed the use and derivative use immunity agreement on the record during trial. (TR 366). She then argued in rebuttal that the agreement was "worthless" because it did not prevent the government from charging Mrs. Latham with a crime based on evidence other than her testimony. The argument was that the agreement gave her no more than anyone else would have under their Fifth Amendment right not to be forced to incriminate herself. (ER Tab B, 518).
 
 
 15
 Although the prosecution went too far in describing the agreement as "worthless," the statement did not rise to a level which could be characterized as misconduct depriving Latham of his federal due process right to a fair trial. The jury had the immunity agreement before it so that it could determine for itself how it might affect Mrs. Latham's credibility, the defense lawyer presented an argument that the agreement detracted from her credibility, and the prosecutor could permissibly argue that the agreement should not detract from her credibility.
 
 
 16
 Latham also argues that the prosecutor introduced false evidence by telling the jury that Latham had confessed to Inspector Hernandez that he sexually abused his stepdaughter. (See Tab A, 478; Tab B, 525-26). Inspector Hernandez testified that Latham did not deny the sexual abuse. Latham said, according to Hernandez's testimony, that there were times when he was under the influence of drugs and it "could have" happened, and he had already gone to a doctor to seek help, but he did not feel he could go forward with obtaining help because his doctor told him he would have to report it to the police. Latham argues that the prosecutor engaged in seriously prejudicial misconduct by mischaracterizing this as a confession. But it can be read as tantamount to a confession. That was a fair inference. The jury was instructed that counsel's arguments were not evidence, that arguments of counsel which depart from the facts should be disregarded, and that counsel may be mistaken in her recollection of the evidence presented during the trial. (SER 26).
 
 
 17
 Latham also argues that the prosecutor mischaracterized evidence by concluding his rebuttal with the false assertion that Latham sought professional counseling for a sexual abuse problem. The prosecutor concluded his rebuttal with the idea, "if Mr. Latham's not guilty, what was he doing going to counselors to talk to them about child sexual abuse?" (ER Tab B, 525). This, as explained above, was a permissible inference from Officer Hernandez's testimony.
 
 
 18
 Name Calling.
 
 
 19
 Latham argues that his due process rights were violated by the prosecutor's repeated references to him as "child molester" and characterization of him as someone who "doesn't think like normal folk" but "like a child molester would think." (ER Tab A, 480). Prosecutorial comments that are "plainly designed to appeal to the passions, fears, and vulnerabilities of the jury" may influence the jury enough to undermine the fairness of the trial. Commonwealth of Northern Mariana Islands v. Mendola, 976 F.2d 475, 486-87 (9th Cir.1992) (prosecutor's suggestions during closing argument of murder trial that the gun is still out there and "[i]f you say not guilty, he walks out right out the door, right behind you" constituted prejudice under harmless error standard). Nevertheless, " 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.' " United States v. Tisdale, 817 F.2d 1552 (11th Cir.1987). Courts have held that, among other misconduct, a prosecutor's unsupported statement that defendant was a "repeated junk dealer" required reversal, United States v. Gonzalez, 488 F.2d 833 (2d Cir.1973), but decided that there was no impropriety when a defendant was compared to the mythological "nine-head serpents" called hydras. United States v. Rewald, 889 F.2d 836, 862 (9th Cir.1989). The prosecutor could have reasonably inferred from the evidence in the record that Latham was a "child molester." The prosecutor would have been more prudent had she avoided putting Latham's conviction at risk by such inflammatory trial methods, but the name calling did not rise to the level at which, on the facts of this case, a "miscarriage of justice" could be found.
 
 
 20
 Ineffective Assistance of Counsel.
 
 
 21
 Latham did not brief his contention that he received ineffective assistance of counsel on appeal, and therefore he has abandoned this issue. Acosta-Huerta v. Estelle, 7 F.3d 139 (9th Cir.1992); see (Grey Brief 13).
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This assumes that the statement in Walker, that we "review for error where the state court has in fact undertaken such review" means that we review on the merits only to the extent the state did, i.e., for plain error. Arguably, once the state has opened the door to a review on the merits, we should apply the general habeas standard, which is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993). The result in this case would be the same either way. None of the conduct complained of had a substantial or injurious effect in determining the verdict