Filed 10/27/25

VERMONT SUPERIOR COURT
Essex Unit
75 Courthouse Drive
Guildhall VT 05905
802-676-3910
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-02781

In re: Gordon Noyes, Jr.

## FINDINGS, CONCLUSIONS, AND ORDER

In this post-conviction relief case, petitioner Gordon Noyes, Jr., seeks to vacate his convictions and sentences for lewd and lascivious conduct with a child and aggravated sexual assault of a child. Petitioner alleges that he did not receive effective assistance of counsel at his criminal trial because his defense counsel failed to object to several statements made by the prosecutor during the State's closing argument that improperly vouched for the complaining witness. Because petitioner has not shown he was prejudiced by defense counsel's failure to object, the petition for post-conviction relief is denied.

### Findings of Fact

The State charged petitioner with lewd and lascivious conduct with a child and aggravated sexual assault of a child based on allegations that petitioner repeatedly sexually assaulted A.O., the niece of his girlfriend and eventual wife, when A.O. was between five and ten years old. Case No. 95-11-13 Excr.

At the criminal trial held on July 25 and July 26, 2019, before Judge Robert Bent, the State was represented by State's Attorney Vincent Illuzzi and petitioner was represented by defense counsel Robert Katims. The State's case was based primarily on A.O.'s statements disclosing the abuse in a 2013 forensic interview (when she was 10) and her testimony at trial (when she was 16), and on petitioner's having had access to A.O. when the abuse was alleged to have occurred. The recording of the forensic interview was presented at trial during A.O.'s live testimony. The State did not present physical evidence of abuse and the State's other witnesses did not present evidence of petitioner's guilt, apart from describing the nature of and circumstances of A.O.'s disclosures. The State's experts presented testimony that contextualized some of A.O.'s statements and the timing of her disclosure. At the conclusion of the trial, after deliberating for less than an hour, the jury convicted petitioner on both counts. Judge Bent sentenced petitioner to concurrent terms of twenty-five years to life. The convictions were affirmed on direct appeal. *State v. Noyes*, 2021 VT 50, ¶ 1, 215 Vt. 182.

Petitioner filed this post-conviction relief petition in September 2021. As later amended and presented at trial, petitioner argues that defense counsel's failure to object to several

Findings, Conclusions, and Order
21-CV-02781 In re: Gordon Noyes, Jr.

Page 1 of 6

statements made by the State during its closing argument rendered counsel's representation constitutionally ineffective.

Specially, petitioner challenges counsel's failure to object to the prosecutor's following statement made when discussing A.O.'s trial testimony: "[T]his is my comment on the evidence that [A.O.] appeared to come across as a very sincere, age-appropriate young lady." Exh. 2 (Tr. 07-26-2019), at 36:13-15.

Petitioner further challenges counsel's failure to object to the following statements made by the prosecutor with respect to the video of A.O.'s forensic interview:

> [W]ho watching this video of a ten-year-old girl coloring and talking about her dog or dogs and playing with her friends and walking across the bridge and maybe falling in and getting wet in the summertime would think this was all made up.

> It didn't appear pre-programmed. It didn't appear out of context.

> It's the State's position that she was not a sophisticated person at the age of ten. If she was lying, what did she exaggerate? She didn't exaggerate anything.

> She told the truth. It's the State's position.

*Id.* at 38:6-10, 13-14; 39:11-13, 18. Petitioner also argues that counsel should have objected to the testimony of A.O.'s mother Crystal that, after A.O. disclosed the abuse, Crystal told her sister (by then, petitioner's ex-wife), that A.O. "wouldn't lie" and was "really serious about this." Exh. 1 (Tr. 07-25-2019), at 146:11-12.[1]

A bench trial was held on the post-conviction relief petition on May 30 and June 4, 2025. Petitioner was represented by Alexander Donn and the State was represented by Vincent Illuzzi. Petitioner attended the hearing remotely from prison.[2] Petitioner presented expert testimony from attorney Robert Sussman. The State presented testimony from petitioner's former defense counsel Robert Katims and expert testimony from attorney David Williams. Following the close

---

[1] The amended petition alleged four claims of ineffective assistance based on defense counsel's: (I) failure to impeach the State's expert witness; (II) failure to object to improper questioning during jury selection; (III) failure to object to improper statements during summation; and (IV) failure to investigate potentially exculpatory evidence. Petitioner affirmatively withdrew the fourth claim in advance of trial and only presented evidence at trial with respect to the third claim. The court accordingly deems any arguments based on claims I, II, or IV of the amended petition to have been waived.

[2] As explained on the record on May 30 and in prior orders, the court denied petitioner's request for in-person participation based on the inability to secure funding to transport petitioner from Northern State Correctional Facility in Newport to the Essex County courthouse in Guildhall, the technological capacity to proceed remotely, and the understanding that petitioner would not be testifying. Order (May 9, 2025); Entry Regarding Motion 9 (May 28, 2025); Entry Order (May 29, 2025). *See generally* V.R.C.P. 43.1(h)(2), (4); *In re B.S.*, No. 24-AP-206, 2024 WL 5215294, at *4 (Vt. Dec. 20, 2024) (unpub. three-justice entry order). The court indicated at the outset of the bench trial that petitioner and his counsel would be permitted the opportunity to confer confidentially at any time upon petitioner's request.

Findings, Conclusions, and Order
21-CV-02781 In re: Gordon Noyes, Jr.

Page **2** of **6**

of evidence, the parties submitted post-hearing memoranda, after which the court took the matter under advisement.

## Conclusions of Law

As noted above, petitioner argues his defense counsel was ineffective for failing to object to the State's improper "vouching" comments made during its closing argument.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right includes the right to "effective assistance of counsel," *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)), and applies in state criminal prosecutions by virtue of the Fourteenth Amendment's Due Process Clause, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). This implies a right to effective counsel that provides "the assistance necessary to justify reliance on the outcome of the proceeding." *In re Kolts*, 2024 VT 1, ¶ 14, 218 Vt. 565 (quoting *Strickland*, 466 U.S. at 692). "Because the focus of the inquiry is on the outcome of the proceeding, a petitioner asserting ineffective assistance of counsel must show not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's unprofessional errors, the proceedings would have resulted in a different outcome." *Id.* (citations and quotations omitted); *see also Garza*, 586 U.S. at 237 (To establish ineffective assistance of counsel, defendant "must prove (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that any such deficiency was prejudicial to the defense." (quotations omitted)).[3]

The U.S. Supreme Court has explained that a "prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused" is inappropriate for at least two reasons:

> such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985). The Vermont Supreme Court has likewise, "[i]n a long line of cases . . . condemned statements by the prosecutor that indicate a personal belief that the defendant is guilty," including statements that the prosecutor believes the testimony of the complaining witness. *State v. Ayers*, 148 Vt. 421, 425 (1987).

---

[3] The Vermont Constitution separately guarantees "[t]hat in all prosecutions for criminal offenses, a person hath a right to be heard by oneself and by counsel." Vt. Const., ch. 1, art. 10. Petitioner, however, relies exclusively on cases applying the federal *Strickland* standard and has not argued (nor has the Vermont Supreme Court held) that the Vermont Constitution provides different or greater protections in this context. Accordingly, the court will analyze petitioner's claim under the *Strickland* standard. *See Lowell v. Dep't for Child. & Fams.*, 2024 VT 46, ¶ 25, 219 Vt. 563 (declining to consider state constitutional claim where plaintiff failed to set forth any rationale for applying different or greater protections under the state constitution).

Findings, Conclusions, and Order
21-CV-02781 In re: Gordon Noyes, Jr.

Page **3** of **6**

Assuming without deciding that the prosecutor's challenged comments here were inappropriate and that defense counsel's failure to object to those comments fell below the standard expected of competent Vermont defense counsel (as both sides' experts have opined), the court turns to the issue of prejudice.

As noted above, to establish prejudice under *Strickland* petitioner must show that there is a "reasonable probability" that, but for defense counsel's unprofessional errors, the outcome of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re Sharrow*, 2017 VT 69, ¶ 9, 205 Vt. 309 (quoting *Strickland*, 466 U.S. at 694.

In support of its prejudice argument, petitioner primarily relies on *State v. Ayers*, a negligent driving case involving a husband (defendant) and wife (complainant) who were separated. Defendant and complainant (who was driving with the couple's daughter), passed each other while driving and became involved in a confrontation that ended with complainant giving a statement to law enforcement that led to a criminal charge being filed against defendant. Complainant and daughter testified at trial against defendant, who was pro se. Defendant attempted cross-examination and also testified in his own defense, providing a "much different" account of the incident. 148 Vt. at 422-23. "The entire trial including evidence, closing arguments and the charge to the jury was concluded in a morning." *Id.* at 423.

After the jury found defendant guilty, he appealed and challenged, among other things, statements that the prosecutor made during closing and rebuttal arguments. As explained by the Vermont Supreme Court:

> [T]he prosecutor made a number of statements that indicated a personal opinion that the defendant's version of the events was false. In the closing argument, he said: 'I think . . . that the story which [complainant] has told you today is the truth. It is what happened.' and 'I believe that [defendant] on that day severely breached that responsibility as a driver by undertaking the actions on the road.' In his rebuttal argument, he said: 'I believe the believable testimony here, the testimony consistent with [defendant's] state of mind on that day and with what happened, is [complainant's] testimony and the testimony of her daughter."

148 Vt. at 424-25. The Court reversed the conviction and remanded for a new trial, finding that the prosecutor's statements constituted plain error for at least four reasons: (i) the argument had "obvious prejudicial impact" because the "case was entirely about credibility" and the "prosecutor's opinion that he believed the wife and disbelieved the defendant could have determinative weight for the jury"; (ii) "the prosecutor repeated his belief a number of times in a short closing argument," and therefore "hardly could be ignored by the jury"; (iii) "the defendant was appearing without counsel and was highly unlikely to interrupt the argument of the prosecutor to object even if he knew that the line of appropriate argument had been crossed"; and (iv) the prosecutor's apparent motive "was to retaliate" against defendant's "entirely proper" statements that vouched for defendant's own credibility as a testifying witness. *Id.* at 426-27.

The court finds *Ayers* materially distinguishable in several respects.

First, the statements here were not as egregious as in *Ayers*. While the prosecutor's statement that it was the "State's position" that A.O. "told the truth" and "didn't exaggerate anything" were comparable, the remaining challenged statements fall short of directly vouching for A.O.'s credibility and instead directed the jurors to evaluate A.O.'s statements for themselves in light of A.O.'s age, demeanor, and the surrounding context. *See United States v. Weatherly*, 525 F.3d 265, 271 (3d Cir. 2008) ("In order for vouching to be improper, the prosecutor's assurance of a witness's credibility must be "based on either the prosecutor's personal knowledge, or other information not contained in the record."); *Latham v. Prewitt*, 74 F.3d 1246 (9th Cir. 1996) (prosecutor's statements, with respect to complainant's testimony, that "everything she said rang true" and "the child simply sounds like she's telling the truth" constituted "reasonable inferences from the evidence" and not "personal assurances based on something which the prosecutor knew outside the evidence before the jury").

Second, the challenged statements here were a much smaller portion of the overall two-day trial than the challenged statements in *Ayers* were of the two- to three-hour trial in that case. *See Weatherly*, 525 F.3d at 273 (court determines prejudice in the context of vouching comments by looking to, among other things, "the scope of the comments and their relationship to the proceeding").

Third, although A.O.'s credibility was obviously critical, the trial here did not involve a credibility contest in the sense of the literal he-said/she-said dispute in *Ayers*. The jury was not asked to consider multiple witnesses' competing narratives of what happened on a specific date. Rather, the jury was presented with multiple statements from A.O., all of which described a multi-year period of repeated sexual abuse by petitioner, notwithstanding some relatively minor discrepancies regarding the specific details of particular assaults.[4] The State's case was relatively strong given the overall consistency of A.O.'s narrative, and petitioner's undisputed access to A.O. during the time period in question. Indeed, it took the jury less than an hour to deliberate before returning a guilty verdict on both counts. *See Shaffer v. Ne. Kingdom Hum. Servs., Inc.*, 2025 VT 31, ¶ 27 (noting that "the strength of the evidence is one of the controlling factors on the duration of the deliberation of the jury" (quotation omitted)). This was thus not a situation "in which the heart of a close case turned on the resolution of conflicting testimony." *Cf. State v. Hemingway*, 148 Vt. 90, 93 (1987) (quotation omitted).

Moreover, although not determinative standing alone, both the State and Judge Bent appropriately explained to the jury that attorney statements were not evidence, and Judge Bent

---

[4] The parties dispute whether defense counsel's primary strategy was to highlight the lack of physical evidence against petitioner or to undermine the credibility of A.O. The record reflects that defense counsel attempted to do both. In his cross-examination, defense counsel pointed out both inconsistencies in the various statements that A.O. had made, and the lack of any corroborating physical evidence such as evidence of bleeding. Defense counsel likewise struck both themes in his closing argument. *See, e.g.*, Exh. 1 (Tr. 7-26-2019) at 50:1-15 ("[The State] needs you to believe [A.O.] because it's the only evidence they have. But they know that her story is not believable . . . . Is she straight-faced lying to you? I submit that's not the only option. Children can come to believe things. Or there might be another explanation. . . . . [I]t's not our job to prove what the motive was. It's the Government's job, if they can, to prove the facts beyond a reasonable doubt.").

emphasized that it was the jury's sole responsibility to determine credibility. Before making the statements that petitioner challenges, the prosecutor stated "[w]hat is evidence is what you've heard here in the witness stand, on video which was admitted into evidence, the exhibits which you'll have, the resumes, and diagrams, figures." Exh. 2 (Tr. 7-26-2019) at 26:6-9. Immediately after the parties' completed their closing arguments, Judge Bent instructed the jury that "[t]he opening statements and closing arguments of the attorneys and other statements which they made during the course of the trial are not evidence . . . and should be taken by you only as arguments of an advocate," and that "[t]he credibility of each of the witnesses and the weight you give their testimony are questions entirely for your determination. . . . After considering the witness's testimony, it is for you to say what you will believe and what you will disbelieve." *Id.* at 62:23-63:2, 64:24-65:1.

In sum, considering the record as a whole, the court sees no reasonable probability that the outcome of the trial would have been different had defense counsel objected to the prosecutor's statements vouching for the credibility of A.O.[5] The petition for post-conviction relief is accordingly denied.

## Order

The petition for post-conviction relief is DENIED.

Electronically signed on: 10/27/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed on: 10/27/2025 pursuant to V.R.E.F. 9(d)

_____
Hon. Evan Hammond
Assistant Judge

Electronically signed on: 10/27/2025 pursuant to V.R.E.F. 9(d)

_____
Hon. Kenn Stransky
Assistant Judge

---

[5] The court similarly finds no prejudice based on defense counsel's failure to object to the testimony of A.O.'s mother that she had told her sister that A.O. "wouldn't lie" and was "really serious" about the abuse allegations.